**KERSHAW, CUTTER & RATINOFF, LLP**
William A. Kershaw (State Bar No. 057486)
Email: wkershaw@kcrlegal.com
Stuart C. Talley (State Bar No. 180374)
Email: stalley@kcrlegal.com
Ian J. Barlow (State Bar No. 262213)
Email: ibarlow@kcrlegal.com
401 Watt Avenue
Sacramento, California 95864
Telephone:  (916) 448-9800
Facsimile:   (916) 669-4499

*Attorneys for Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| DANIEL FLORES and MINDI FLORES, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LUMBER LIQUIDATORS HOLDINGS, INC., a Delaware Corporation; LUMBER LIQUIDATORS, INC., a Delaware Corporation; and DOES 1 through 50, inclusive.<br><br>Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>1) **UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE SECTION 17200, ET SEQ.;**<br><br>2) **FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE SECTION 17500, ET SEQ.;**<br><br>3) **CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE SECTION 1750, ET SEQ.;**<br><br>4) **SONG-BEVERLY ACT, CAL. CIV. CODE § 1790, ET SEQ.;**<br><br>5) **STRICT PRODUCTS LIABILITY;**<br><br>6) **NEGLIGENCE;**<br><br>7) **UNJUST ENRICHMENT; AND**<br><br>8) **DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

-1-

1   Plaintiffs Daniel Flores and Mindi Flores ("Plaintiffs"), individually and
2   behalf of all others similarly situated, allege the following against Defendants
3   Lumber Liquidators Holdings, Inc. and Lumber Liquidators, Inc. (collectively,
4   "Lumber Liquidators" or "Defendants"):

5   **<u>NATURE OF THE ACTION</u>**

6   1.   Lumber Liquidators advertised, marketed, packaged, sold, supplied
7   and supervised and controlled the manufacturing of numerous lines of composite
8   laminate and engineered wood flooring products that contain and emit toxic levels
9   of formaldehyde, which is known to cause cancer.

10   2.   Formaldehyde exposure is linked to cancer of the nose and throat and
11   can cause nosebleeds, scratchy eyes, nose and throat irritation, nausea, headaches,
12   dizziness and exacerbate asthma.  Formaldehyde exposure is a special concern for
13   children and the elderly.

14   3.   The flooring products at issue in this case were manufactured at mills
15   located in China and were produced with glue or resin containing levels of
16   formaldehyde that are unsafe and greatly exceed limits established by the California
17   Air Resources Board ("CARB") and set forth in California's Airborne Toxic
18   Control Measure to Reduce Formaldehyde Emissions from Composite Wood
19   Products.  Cal. Code Regs. tit. 17, §§ 93120-93120.12 ("CARB Regulations").
20   They also exceed the limits set forth under the Formaldehyde Standards for
21   Composite-Wood Products Act, 15 U.S.C. § 2697.

22   4.   Lumber Liquidators sells its flooring products in over 350 stores
23   nationwide, including more than 30 in California.  It also sells and markets flooring
24   products through its website, www.lumberliquidators.com.

25   5.   Between October 2013 and November 2014, three certified and
26   accredited laboratories tested formaldehyde emissions of laminate wood flooring
27   products purchased from several nationwide retail outlets, including Home Depot,
28   Lowe's, and Lumber Liquidators.  Of the flooring products tested, by far the

highest formaldehyde levels were found in the Chinese-manufactured laminate wood flooring products sold by Lumber Liquidators.  Similar Lumber Liquidators products that were manufactured in North America generally had much lower formaldehyde levels and complied with CARB formaldehyde emissions standards. In addition, testing on similar products from Lumber Liquidators' competitors showed significantly lower formaldehyde levels and generally complied with CARB formaldehyde emission standards.

6.     For at least two years, Lumber Liquidators knew or should have known that its Chinese-made laminate wood flooring products were unsafe and failed to comply with CARB Regulations.

7.     However, Lumber Liquidators failed to disclose the formaldehyde levels of its laminate wood flooring products or provide any warning that these flooring products contain excessive levels of formaldehyde and are unsafe.

8.     Lumber Liquidators instead expressly misrepresented that its laminate wood flooring products were CARB compliant.  Its website also falsely states that "[Lumber Liquidators'] commitment to the health and safety of our customers includes meeting or exceeding industry standards on formaldehyde emissions through compliance with applicable regulations such as those established by the California Air Resources Board (CARB)." (http://www.lumberliquidators.com/sustainability/health-and-safety/   (last   visited   Apr. 30, 2015).)   Lumber Liquidators also misrepresents that its products are "100% safe." (*Id.*)

9.     Lumber Liquidators' conduct regarding its Chinese-manufactured laminate flooring is the subject of investigation by a U.S. Attorney's Office and inquiry by the Securities and Exchange Commission ("SEC").  It is also being actively investigated by the United States Consumer Product Safety Commission ("CPSC").

10.     The above-described conduct constitutes violations of the California

Unfair Competition Law, California False Advertising Law, California Consumer Legal Remedies Act, Song-Beverly Act, strict products liability, negligence and unjust enrichment.  Plaintiffs seek declaratory relief, injunctive relief, restitution, monetary damages, and other damages on behalf of themselves and the putative Class.

## **PARTIES**

11.     Plaintiffs Daniel Flores and Mindi Flores ("Plaintiffs") are citizens of the State of California and residents of Riverside, California.

12.     Defendant Lumber Liquidators Holdings, Inc. is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia  23168.

13.     Defendant Lumber Liquidators, Inc. is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia  23168. Lumber Liquidators, Inc. is a wholly-owned subsidiary of Lumber Liquidators Holdings, Inc.

14.     At all times relevant herein, Lumber Liquidators was engaged in the business of manufacturing, designing, constructing, assembling, marketing, distributing, and selling manufactured composite laminate and engineered wood flooring in Riverside County, California and throughout the United States of America.

## **JURISDICTION AND VENUE**

15.     The Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act ("CAFA").  Plaintiffs and many other members of the putative Class are residents and citizens of states different from Defendants, which are Delaware corporations with their principal places of business in Toano, Virginia.  Plaintiffs are informed and believe, and based thereon allege, that the proposed Class exceeds 100 persons and the amount in controversy in this case, exclusive of interest and costs, exceeds $5,000,000.

16.     Venue is proper pursuant to 28 U.S.C. § 1391 in that Plaintiffs reside in this judicial district, purchased their Lumber Liquidators laminate flooring product in this district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.  In addition, Lumber Liquidators does substantial business in this judicial district, has received substantial benefit from doing business in this judicial district, and has knowingly engaged in activities directed at consumers in this judicial district.  Furthermore, a significant number of Lumber Liquidators' customers are California residents, and the wrongful acts alleged herein have affected consumers throughout California.  California has a significant contact or aggregation of contacts to the claims at issue herein in that Lumber Liquidators promotes, markets, distributes and sells the flooring products at issue in California.  Lumber Liquidators is subject to personal jurisdiction in the State of California and in this judicial district.

## **FACTUAL ALLEGATIONS**

**A.    Lumber Liquidators Represents That It Monitors Production And That Its Laminate Wood Flooring Complies With California Air Resources Board Regulations**

17.     Lumber Liquidators is the largest specialty retailer of hardwood flooring in North America.  In its April 10, 2015 letter to shareholders, it reported 2014 financial highlights that included net sales growth of 4.7% to $1.05 billion and an opening of "34 new stores, bringing our total to 352 stores in 46 states and Canada."[1]

18.     As part of Lumber Liquidators' description of its "Competitive Strengths," Lumber Liquidators states that it is able to offer generally lower prices than its competitors in part by "sourcing proprietary products direct from the mill . .

_____

[1] Lumber Liquidators 2014 Annual Report, Letter from Tom Sullivan and Robert Lynch to Shareholders, dated April 10, 2015.

. . . We source directly from mills all over the world, and often are a mill's most significant relationship.  Proprietary brands allow us greater control over . . . production, which we monitor through an expansive network of experienced quality control and assurance professionals."[2]

19.    Lumber Liquidators describes its relationship with mills as "collaborative" and claims that it sets "demanding specifications for product quality" and that its "own quality control and assurance teams are on-site at certain mills, coordinating inspection and assurance procedures."[3]

20.    On its website, Lumber Liquidators boasts that it offers the "Highest Quality Flooring.  Guaranteed."  Lumber Liquidators represents that it "inspect[s] your flooring at every stage: before it's finished, during production, and as it's shipped . . . . We not only comply with laws – we exceed them. For example, California has the highest standards regarding laminate and engineered flooring. All of our mills that produce these products are certified by a Third Party approved by the State of California – and we apply these standards nationwide . . . . We are continually investing in, testing, evaluating and assuring the highest quality . . . Our Quality Assurance team . . . work[s] around the world to test your flooring at every stage.  We also regularly send product out to an independent lab for additional testing to ensure quality." (http://www.lumberliquidators.com/assets/web/Highest_Quality_Flooring_Guarantee/index.html (last visited May 6, 2015).)

21.    With respect to its laminate and engineered flooring products, Lumber Liquidators represents to consumers – through its website, product packaging and in various other materials – that the flooring products meet California's rigorous California Air Resources Board ("CARB") formaldehyde standards.  In fact, Lumber Liquidators represents that it requires that its flooring products meet CARB

---

[2] Lumber Liquidators 2014 Annual Report at 2.

[3] *Id.* at 3.

1  standards even for flooring products sold outside of California. Lumber
2  Liquidators references CARB requirements and its purported compliance with those
3  requirements on its website:

**<u>Is Lumber Liquidators Compliant with the California law?</u>**

**Laminate and engineered flooring products sold by Lumber
Liquidators are purchased from mills whose production method
has been certified by a Third Party Certifier approved by the State
of California to meet the CARB standards.** The scope of the
certification by the Third Party Certifier includes the confirmation that
the manufacturer has implemented the quality systems, process
controls, and testing procedures outlined by CARB and that their
products conform to the specified regulation limits. The Third Party
Certifier also provides ongoing oversight to validate the
manufacturers' compliance and manufacturers must be periodically re-
certified.

**<u>Does CARB only apply to California?</u>**

Though it currently applies only to products sold in California,
**Lumber Liquidators made a decision to require all of our vendors
to comply with the California Air Resources Board regulations
regardless of whether we intended to sell the products in
California or any other state/country.**

**<u>What extra steps does Lumber Liquidators take to ensure
compliance?</u>**

In addition to the California Air Resources Board requirements,
**Lumber Liquidators regularly selects one or more finished
products from each of its suppliers and submits them for
independent third-party lab testing.** This is done as a monitoring
activity to validate ongoing quality control.

(http://www.lumberliquidators.com/ll/flooring/ca-air-resources-board-
regulations?Wt.ad=GLOBAL_FOOTER_CaliRegCARB (last visited May 5, 2015)
(emphasis in the original).)

22.   Lumber Liquidators also states that

> [t]o comply with the CARB standards, applicable laminate and engineered flooring and accessories sold by Lumber Liquidators are purchased from manufacturers whose production methods have been certified by a Third Party Certifier approved by the State of California to meet the CARB standards; or from suppliers who source composite wood raw materials only from certified manufacturers. The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their composite wood products conform to the specified emission limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.

(http://www.lumberliquidators.com/sustainability/health-and-safety/ (last visited May 6, 2015).)

23. The product packaging for Lumber Liquidators' laminate wood flooring expressly represents that product formaldehyde levels comply with CARB Phase 2; product packaging labels state "CARB . . . California 93120 Phase 2 Compliant for Formaldehyde." On information and belief, this representation appears on all Lumber Liquidators packaging for its Chinese-made laminate flooring products regardless of whether the product actually complies with CARB standards.

24. In addition, Lumber Liquidators purchase orders include a warranty stating that the customer's purchased flooring product was "sourced, produced, sold, . . . labeled, manufactured, and/or rendered to Lumber Liquidators in compliance with all applicable laws, codes and regulations." (http://www.lumberliquidators.com//ll/customer-care/potc800201 (last visited May 6, 2015).)

## B. California Air Resources Board Regulations

25. In 1988, California officially listed formaldehyde as a chemical known to cause cancer.

26.   In 1992, CARB listed formaldehyde as a Toxic Air Contaminant in California with no safe level of exposure.

27.   In 2007, CARB approved the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products.   Cal Code Regs., tit. 17, §§ 93120-93120.12 ("CARB Regulations").   These formaldehyde emission standards became effective January 2009 and apply to composite wood ("laminate") products, including flooring.   *Id.* § 93120.2(a).   They establish decreasing formaldehyde emission limits in two phases.   *Id.*

28.   The CARB Phase 1 Emission Standard for medium density fiberboard ("MDF"), which was in effect from January 1, 2009 to December 31, 2010, limited formaldehyde emissions to 0.21 parts per million ("ppm").   The Phase 2 Emission Standard for MDF mandates that, as of January 1, 2011, MDF flooring products such as those involved in this action must emit no more than 0.11 ppm of formaldehyde.   The CARB Phase 1 Emission Standard for Thin MDF (medium density fiberboard that has a maximum thickness of eight millimeters[4]), which was in effect from January 1, 2009 to December 31, 2011, limited formaldehyde emissions to 0.21 ppm. The CARB Phase 2 Emission Standard for Thin MDF requires that, as of January 1, 2012, Thin MDF flooring products such as those involved in this action must emit no more than 0.13 ppm of formaldehyde.   Cal. Code Regs., tit. 17, § 93120.2(a).

29.   CARB Regulations also specify the testing methods for determining whether products satisfy emission standards.   A product fails to comply with CARB emission standards if the composite wood product was produced by a manufacturer without a current third party certification program or used certain materials without CARB approval, or if records of testing conducted by the manufacturer or a third party certifier show that a particular composite wood product exceeded the

---

[4] Cal. Code Regs., tit. 17, § 93120.1(40).

applicable formaldehyde emission limit.  Cal. Code Regs., tit. 17, § 93120.2(a)(1) and (2).

30.     In addition, a composite wood product does not comply with CARB emission standards if:

> [a] composite wood product produced by a manufacturer is tested at any time after it is manufactured, using either the compliance test method specified in section 93120.9(a) or the enforcement test method specified in section 93120.9(b), and is found to exceed the applicable emission standard . . . .

Cal. Code Regs., tit. 17, § 93120.2(a)(3).

31.     Compliance with CARB formaldehyde emission limits is determined by testing results from the composite wood products contained in finished goods, not from the finished goods themselves.

32.     On or around September 13, 2013, CARB issued a document entitled "Standard Operating Procedure for Finished Good Test Specimen Preparation Prior to Analysis of Formaldehyde Emissions from Composite Wood Products."  These standard operating procedures describe the methods to be used for preparing or deconstructing finished goods and removing coating or laminate before testing the underlying composite wood product for formaldehyde emissions.

C.     **Lumber Liquidators' Laminate Wood Flooring Products**

33.     Lumber Liquidators supervises and/or controls the manufacturing and packaging of composite laminate and engineered flooring products made in China ("Flooring Products") and distributes, markets, and sells those products in California and throughout the United States.  These Flooring Products contain formaldehyde and emit formaldehyde at levels that exceed the limits set forth in CARB Regulations.  The Flooring Products include:

- 8 mm Bristol County Cherry Laminate Flooring
- 8 mm Dream Home Nirvana French Oak Laminate Flooring
- 8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring

- 12 mm Dream Home Ispiri African Thuya Burlwood Vinyl Laminate Flooring
- 12 mm Dream Home Ispiri Americas Mission Olive Laminate Flooring
- 12 mm Dream Home Ispiri Chimney Tops Smoked Oak Laminate Flooring
- 12 mm Dream Home Ispiri Mill River Walnut Laminate Flooring
- 12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring
- 12 mm Dream Home Ispiri Sloan Street Teak Laminate Flooring
- 12 mm Dream Home Kensington Manor Antique Bamboo Laminate Flooring
- 12 mm Dream Home Kensington Manor Cape Doctor Laminate Flooring
- 12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate Flooring
- 12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring
- 12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring
- 12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10029601)
- 12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10023958)
- 12 mm Dream Home Kensington Manor Handscraped Summer Retreat Teak Laminate Flooring
- 12 mm Dream Home Kensington Manor High Sholed Hickory Laminate Flooring
- 12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring
- 12 mm Dream Home Kensington Manor Tanzanian Wenge Laminate Flooring

-11-

- 12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring
- 12 mm Dream Home St. James African Mahogany Laminate Flooring
- 12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring
- 12 mm Dream Home St. James Bunet Road Russett Laminate Flooring
- 12 mm Dream Home St. James Brazilian Koa Laminate Flooring
- 12 mm Dream Home St. James Chimney Rock Charcoal Laminate Flooring
- 12 mm Dream Home St. James Cumberland Mountain Oak Laminate Flooring
- 12 mm Dream Home St. James Golden Acacia Laminate Flooring
- 12 mm Dream Home St. James Nantucket Beech Laminate Flooring
- 12 mm Dream Home St. James Oceanside Plank Bamboo Laminate Flooring
- 12 mm Dream Home St. James Vintner's Reserve Laminate Flooring
- 15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring

34.     The above Flooring Products are subject to CARB Regulations and upon information and belief are manufactured in China using a common formula, design and/or manufacturing process.

**D.     Lumber Liquidators Misrepresents That Its Laminate and Engineered Flooring Products Comply with CARB Regulations and Fails to Disclose That Such Flooring Products Contain or Emit Unlawful Levels of Formaldehyde**

35.     In 2013 and 2014, three certified laboratories tested formaldehyde emissions of laminate flooring from nationwide retailers, including Home Depot, Lowe's and Lumber Liquidators.  The test results demonstrated that while Home Depot, Lowe's and American-made Lumber Liquidators flooring products

generally contained acceptable levels of formaldehyde, samples of Lumber Liquidators' Chinese-made laminate flooring greatly exceeded CARB Regulations.

36.     In addition, in 2014, as part of a *60 Minutes* investigation into formaldehyde emissions of Lumber Liquidators' Flooring Products, *60 Minutes* purchased thirty-one boxes of Flooring Products and sent them to two certified labs for testing.  The laboratories tested the Flooring Products for CARB 2 compliance using methods that CARB developed and uses.  The laboratories found that thirty of the thirty-one samples tested had formaldehyde emission levels that exceeded the limits set by CARB.  The highest-emitting Lumber Liquidators product released thirteen times more formaldehyde than what is permitted under CARB 2 standards. (http://www.cbsnews.com/news/more-on-tests-used-to-investigate-lumber-liquidators/ (last visited May 6, 2015).)  The products listed in paragraph 33 are among the products that were tested.

37.     The two laboratories also performed a California Department of Public Health 01350 test, "which measures the concentration of formaldehyde emissions coming off the laminates into the air of a typical home.  The highest-emitting Lumber Liquidators sample that the labs tested emitted a concentration of formaldehyde into the air of a typical home that the US EPA (Environmental Protection Agency) has cited as 'polluted indoor conditions.'" (http://www.cbsnews.com/news/more-on-tests-used-to-investigate-lumber-liquidators/ (last visited May 6, 2015).)

38.     *60 Minutes* aired the story, "Lumber Liquidators Linked to Health and Safety Violations," on March 1, 2015.  (http://www.cbsnews.com/news/lumber-liquidators-linked-to-health-and-safety-violations/ (last visited May 6, 2015).)

39.     The news story featured statements from a general manager of a mill in Changzhou, China that manufactures laminate flooring for Lumber Liquidators. The general manager told *60 Minutes* investigators, "I have to be honest with you. It's not CARB 2 [compliant] . . . . It's just the price issue.  We can make CARB 2

-13-

but it would be very expensive." (*Id.*)  After pointing to a stack of Flooring Products labeled as CARB 2 compliant, the investigator asks "But it's not CARB 2?" to which the mill employee responds "Not CARB 2."  At each of the three mills visited by *60 Minutes*, employees "openly admitted that they use core boards with higher levels of formaldehyde to make Lumber Liquidators laminates, saving the company 10-15 percent on the price.  At all three mills they also admitted falsely labeling the company's laminate flooring as CARB 2, . . . ." (*Id.*)

40.    Lumber Liquidators knew that its Flooring Products were not CARB 2 compliant before the *60 Minutes* news story was televised.  "Lumber Liquidators CEO Rob Lynch admitted CARB'S preliminary tests had revealed high levels of formaldehyde before the '60 Minutes' broadcast." (http://www.cbsnews.com/news/lumber-liquidators-ceo-admits-tests-showed-high-formaldehyde-levels/ (last visited May 6, 2015).)

41.    In or around February 25, 2015 – and while representing that its Flooring Products were CARB 2 compliant for formaldehyde emissions, that its Flooring Products are manufactured in mills whose production methods meet CARB standards and that it has quality control measures in place to ensure that products from suppliers comply with CARB standards – Lumber Liquidators acknowledged in an SEC filing that

> While our suppliers agree to operate in compliance with applicable laws and regulations . . . we do not control our suppliers.  Accordingly, despite our continued investment in quality control, we cannot guarantee that they comply with such laws and regulations or operate in a legal, ethical and responsible manner.  Violation of environmental, labor or other laws by our suppliers or their failure to operate in a legal, ethical and responsible manner, could . . . lead to litigation and recalls, which could damage our reputation and our brands, increase our costs, and otherwise hurt our business.

(Lumber Liquidators February 25, 2015 10-K to the United States Securities and Exchange Commission at p. 14, *available at*

-14-

http://app.quotemedia.com/data/downloadFiling?webmasterId=101533&ref=10099
135&type=HTML&symbol=LL&companyName=Lumber+Liquidators+Holdings&
formType=10-K&dateFiled=2015-02-25 (last visited May 6, 2015).)

42.     While Lumber Liquidators claims that it does not have control over its suppliers, it has described its relationship with mills as "collaborative," states that it "monitor[s] [its] suppliers' adherence to [quality] standards," and that it is "able to set demanding specifications for product quality and [that] our own quality control and assurance teams are on-site at the mills, coordinating inspection and assurance procedures."

43.     Lumber Liquidators also knew or should have known that its Flooring Products exceeded permissible levels of formaldehyde based on a news article and putative class action lawsuits filed against it in federal court in 2013.  On June 20, 2013, the news website www.seekingalpha.com published an article entitled "Illegal Products Could Spell Big Trouble at Lumber Liquidators," which detailed high formaldehyde levels in Chinese-made composite laminate flooring sold by Lumber Liquidators.  (http://seekingalpha.com/article/1513142-illegal-products-could-spell-big-trouble-at-lumber-liquidators (last viewed May 6, 2015).) Furthermore, *Kiken v. Lumber Liquidators Holdings, Inc., et al.*, Case No. 4:13-cv-00157 (E.D. Va.) and *Williamson v. Lumber Liquidators Holdings, Inc.*, Case No. 1:13-cv-01487 (E.D. Va.),[5] were filed on November 26, 2013 and December 3, 2013, respectively.  Both of these lawsuits include allegations relating to excessive formaldehyde levels emitted from Lumber Liquidators flooring products imported from China.

44.     Moreover, numerous customers have submitted complaints relating to Lumber Liquidators and flooring product formaldehyde emissions.  For example, on May 30, 2013, one customer stated that she

---

[5] The *Williamson* case was voluntarily dismissed on January 28, 2014.

noticed the odor as the installation took place and found it quite peculiar. I chalked it up as a new product odor especially since the planks just came out of the boxes. Within the next 48 hours I realized it was not a temporary odor.  I have burning nostrils; my face feels like it is stinging, and I'm having a dull headache. Yet, when I leave the house, the above symptoms disappear.

The smell has permeated the house and the odor is noxious. I had to close the intake air conditioner vent in that room.  I believe the bamboo wood has a high level of formaldehyde.

(http://www.consumeraffairs.com/homeowners/lumber_liquidators.html?page=9, last visited on May 6, 2015).)

On September 11, 2014, another customer stated that

the product we were sold was supposedly Made in the USA--nope, China. One of my children cannot walk barefoot on the floor because he will blister from the formaldehyde content. We saved for years for this floor, it will need to be replaced. Please RUN to another dealer. This company does not care about the customer one bit. This has been a devastating blow to our family.

(http://www.consumeraffairs.com/homeowners/lumber_liquidators.html?page=5, last viewed on May 6, 2015).)

45.    Based on the aforementioned news articles and broadcasts, lawsuits, customer complaints and its own statements and reports, Lumber Liquidators knew or should have known that its Flooring Products violated CARB Regulations. Despite such knowledge, Lumber Liquidators did nothing to address the excessive formaldehyde emissions in its Flooring Products and failed to disclose to consumers that its Flooring Products contained high formaldehyde levels.  Rather, it continues to sell these Flooring Products in California and throughout the nation, and publically maintains that the Flooring Products are "safe" and "meet the highest quality and environmental standards."  It dismisses the recent attacks against it as being "driven by a small group of short-selling investors" and wrongly asserts that the emission results included in the *60 Minutes* report were based on improper

laboratory                                 testing                                      methods.
(http://www.lumberliquidators.com/sustainability/health-and-
safety/?WT.ad=GLOBAL_FOOTER_HealthSafety, last visited on May 6, 2015).)
Indeed, the results underlying the *60 Minutes* news segment were produced from
laboratory tests "using the method that CARB developed and uses."
(http://www.cbsnews.com/news/more-on-tests-used-to-investigate-lumber-
liquidators/ (last visited on May 6, 2015).)

46.    On or around March 12, 2015, and after *60 Minutes* aired its
investigation into the excessive formaldehyde content in Lumber Liquidators
Flooring Products, Lumber Liquidators began offering free home test kits to
consumers who purchased its Flooring Products.   While Lumber Liquidators
represented that the testing was being administered and that testing results would be
produced by an independent laboratory, on information and belief, the third party
conducting the testing was hired and is being paid by Lumber Liquidators and
testing results are shared with Lumber Liquidators.   Furthermore, the results
provided from these home test kits are unreliable, inaccurate and fail to measure
personal exposure to formaldehyde.

47.    Lumber Liquidators materially misrepresents the safety and quality of
its Flooring Products by representing that they are CARB 2 compliant when in fact
they are not.

48.    Lumber Liquidators fails to disclose to consumers that its Flooring
Products contain excessive and unlawful levels of formaldehyde.

49.    By continuing to publically misrepresent the safety and quality of its
Flooring Products, failing to disclose that its Flooring Products do not comply with
CARB Regulations, and offering and funding free testing kits that fail to accurately
report formaldehyde levels in Flooring Products that are installed in customers'
homes, Lumber Liquidators actively concealed and continues to conceal that its
Flooring Products are dangerous and fail to comply with CARB 2 standards.

50.    The excessive formaldehyde levels in Lumber Liquidators Flooring Products would be considered material by a reasonable consumer.  Had Plaintiffs and Class members known that the Flooring Products contained excessive amounts of formaldehyde, they would not have purchased and installed the Flooring Products.

51.    Reasonable consumers, like Plaintiffs and Class members, expect and assume that laminate and engineered wood Flooring Products that they purchased and installed are safe and comply with applicable laws and regulations.  Plaintiffs and Class members would also be reasonable in assuming that Lumber Liquidators would not sell, market, oversee and control the manufacturing of or supply Flooring Products that are known to be unsafe and unlawful, and would disclose any safety and compliance concerns when it learns of them.  Further, Plaintiffs and Class members would be reasonable in assuming that Lumber Liquidators would not fail to disclose dangerous and non-compliant Flooring Product conditions, persistently deny them, and refuse to recall and pay for costs incurred to purchase, install, remove and replace these Flooring Products.

**E.    Facts Relating to the Named Plaintiffs**

52.    Daniel and Mindi Flores purchased 12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10029601) from Lumber Liquidators on or around March 30, 2014.

53.    The Flooring Product and related sheeting and underlayment cost Mr. and Mrs. Flores $3,279.71.  In addition, they incurred over $3,300 for Flooring Product installation and related supplies.

54.    After viewing the *60 Minutes* report on unsafe and excessive formaldehyde levels in Lumber Liquidated Flooring Products, Plaintiffs decided to hire a company to test formaldehyde emissions from the Lumber Liquidators Flooring Product in their home.  The results from the testing performed on March 25, 2015 – close to one year after they purchased the flooring – were disturbing.

While the CARB 2 formaldehyde emission limit is .11 ppm for MDF and .13 ppm for Thin MDF, the testing results for the Lumber Liquidators Flooring Product in Plaintiffs' home revealed formaldehyde levels of ***.68 ppm.*** Plaintiffs paid $550 to have the Flooring Product tested.

55. The labeling on the packaging for the 12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10029601) that Plaintiffs purchased expressly represented that the Lumber Liquidators Flooring Product was CARB 2 compliant for formaldehyde. A true and accurate image of the packaging that accompanied Plaintiffs' Flooring Product appears below:



56. At the time Plaintiffs purchased the Lumber Liquidators Flooring Product, Lumber Liquidators misrepresented that the Flooring Product complied with CARB standards for formaldehyde emissions and failed to disclose that the formaldehyde emissions for the Flooring Product far exceeded the limits established in CARB Regulations.

57. Plaintiffs relied on Lumber Liquidators' material misrepresentation that its Flooring Product complied with CARB standards for formaldehyde

emissions and/or Lumbar Liquidators' failure to disclose that formaldehyde emissions for the Flooring Product far exceeded the limits established in CARB Regulations.

58.    As a result of Lumber Liquidators' misrepresentations and failure to disclose, Plaintiffs purchased the Lumber Liquidators Flooring Product and have suffered harm related to the purchase, installation and testing of the Flooring Product.  They may incur additional expense to have their flooring removed and replaced.

59.    Plaintiffs would not have purchased the Flooring Product had they known that it emitted formaldehyde at levels that exceed safety standards established in the State of California.

60.    Had the Flooring Product complied with CARB Regulations, Plaintiffs would have been satisfied with their purchase and would likely purchase the Flooring Product in the future.

## TOLLING OF THE STATUTE OF LIMITATIONS

61.    The causes of action alleged herein did or will accrue only upon Plaintiffs' and Class members' discovery that their Lumber Liquidators Flooring Products failed to comply with CARB Regulations for formaldehyde emissions. Plaintiffs and Class members were not reasonably able to discover that the Flooring Products were defective until after purchasing them, despite the exercise of due diligence.  Furthermore, Lumber Liquidators failed to notify Plaintiffs and Class members that its Flooring Products did not comply with CARB Regulations, misrepresented that its Flooring Products comply with CARB Regulations and denied and continues to deny that its Flooring Products exceed CARB Regulations governing formaldehyde emissions.  Therefore, the discovery rule is applicable to the claims asserted by Plaintiffs and Class members.

62.    Moreover, Lumber Liquidators is under a continuous duty to disclose to the Plaintiffs and Class members the true character, quality, and nature of the

Flooring Products and to disclose the existence of any defects. Lumber Liquidators knowingly, affirmatively, and/or actively concealed the true character, quality, and nature of the defects at issue. Furthermore, Plaintiffs reasonably relied upon Lumber Liquidators' knowing and affirmative misrepresentations and/or active concealment. Based on the foregoing, Lumber Liquidators is estopped from relying on any statutes of limitation in defense of this action.

63. Lumber Liquidators has known that its Flooring Products do not comply with CARB Regulations for several years, as early as 2009 if not earlier, and has concealed from and failed to notify Plaintiffs and Class members of the actual formaldehyde emission levels of its Flooring Products. Any applicable statutes of limitation have been tolled by Lumber Liquidators' knowing, active and ongoing concealment and denial of the facts alleged herein. Plaintiffs and the members of the Class have been kept ignorant by Lumber Liquidators of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiffs and Class members could not reasonably have discovered that Lumber Liquidators' flooring contained dangerously high levels of formaldehyde and uniformly fails to comply with CARB emission standards for formaldehyde.

## CLASS ACTION ALLEGATIONS

64. Plaintiffs bring this action both individually and as a class action pursuant to Federal Rule of Civil Procedure 23 against Lumber Liquidators on their own behalf and on behalf of the Class (the "Class") defined below.

65. Plaintiffs bring this class action on behalf of themselves and the following proposed Class:

> All persons in California who purchased laminate and/or engineered wood flooring products, other than for purposes of resale, that was manufactured by or for Lumber Liquidators in China and that Lumber Liquidators represented or advertised as being CARB compliant.

66.    Subject    to    additional    information    obtained    through    further investigation and discovery, the foregoing definitions of the Class may be expanded or narrowed by amendment or amended complaint.  Specifically excluded from the proposed Class are business entities for purposes of Plaintiffs' claims for relief under the California Consumers Legal Remedies Act, Civil Code § 1750, *et seq*. Also specifically excluded are Lumber Liquidators, its officers, directors, agents, trustees,  parents,  children,  corporations,  trusts,  representatives,  employees, principals, servants, partners, joint venturers, or entities controlled by Lumber Liquidators, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Lumber Liquidators and/or its officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

67.    <u>Numerosity</u>.  Though the exact number and identity of Class members is not presently known, they can be identified in Lumber Liquidators' records through coordinated discovery pursuant to this class action.  Plaintiffs believe that the proposed Class consists of tens of thousands of members throughout the State of California.

68.    <u>Existence and predominance of common questions</u>.    Common questions of fact and law predominate over any questions affecting only individual members of the Class.  The predominating common or class-wide questions of fact include the following:

a.    Whether    Lumber    Liquidators    adequately    and    properly monitored its mills or manufacturing plants in China to ensure compliance with CARB Regulations;

b.    Whether Lumber Liquidators Flooring Products exceed CARB limits for formaldehyde emissions;

c.    Whether Lumber Liquidators falsely labeled and advertised its Flooring Products as being CARB compliant;

d.   Whether any false representations regarding CARB compliance were made knowingly and willfully;

e.   Whether Lumber Liquidators concealed and failed to disclose or omitted material facts from its communications with or representations to Class members regarding the levels of formaldehyde in its Flooring Products;

f.   Whether Lumber Liquidators knew or should have known about the misrepresentations concerning its Flooring Products prior to selling the Flooring Products to Plaintiffs and Class members;

g.   Whether Lumber Liquidators had a duty to disclose to its consumers material facts concerning the true formaldehyde emission levels of its Flooring Products;

h.   Whether Lumber Liquidators' conduct as alleged herein constitutes a violation of the California Unfair Competition Law;

i.   Whether Lumber Liquidators' conduct as alleged herein constitutes a violation of the California False Advertising Law;

j.   Whether Lumber Liquidators' conduct as alleged herein constitutes a violation of the California Consumer Legal Remedies Act;

k.   Whether Lumber Liquidators breached implied and express warranties to Plaintiffs and Class members relating to its Flooring Products;

l.   Whether Lumber Liquidators is strictly liable for the design, manufacturing, distribution, supply, assembly, and/or labeling defects of its Flooring Products;

m.   Whether Lumber Liquidators was negligent in designing, manufacturing, distributing, supplying, assembling, mislabeling,

-23-

selling and failing to warn Plaintiffs and Class members regarding its defective Flooring Products;

n.  Whether Lumber Liquidators' conduct as alleged herein caused Plaintiffs and Class members to suffer injury;

o.  Whether Lumber Liquidators should be ordered to disgorge, for the benefit of Plaintiffs and Class members, all or part of its ill-gotten profits received from the sale of its defective Flooring Products; and

p.  The proper measure of damages and the appropriate injunctive relief.

69.     Lumber Liquidators' defenses, to the extent that any such defenses apply, are applicable generally to Plaintiffs and the entire Class and are not distinguishable as to proposed Class members.

70.     <u>Typicality</u>.  Plaintiffs' claims are typical of the claims of the Class members, as all Class members were and are similarly affected by Lumber Liquidators' wrongful conduct complained of herein.  Plaintiffs and each of the Class members were exposed to the same uniform misconduct and have been injured by the same wrongful practices.

71.     <u>Adequacy</u>.  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent.  Plaintiffs have retained counsel highly experienced in the prosecution of complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs and their counsel will fairly and adequately protect the interests of all members of the Class.

72.     <u>Superiority</u>.  A class action is superior to any other methods available for both fair and efficient adjudication of the rights of each Class member.  Joinder of individual Class members is impracticable.  Individual litigation would be unnecessarily costly and burdensome and would deter individual claims.  To

process individual cases would increase both the expenses and the delay not only to Class members, but also to Lumber Liquidators and the Court.  In contrast, a class action in this matter will avoid case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each Class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

73.     The Class may be certified because:

a.     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members of the proposed Class that would establish incompatible standards of conduct for Lumber Liquidators;

b.     The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.     Lumber Liquidators has acted or refused to act on grounds generally applicable to the Class members, thereby making appropriate final and injunctive relief with respect to Class members as a whole.

## FIRST CLAIM FOR RELIEF
### (For Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*)

74.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

75.     Lumber Liquidators' practices as alleged in this Complaint constitute unlawful, unfair, and fraudulent practices under the Unfair Competition Law, Business and Professions Code section 17200, *et seq.* ("UCL").

76.     Lumber Liquidators committed unlawful acts and practices by, among other things, engaging in conduct, as alleged herein, that violates California Civil Code § 1790, *et seq.*, Cal. Civ. Code § 1750, *et seq.*, California Business and Professions Code § 17500, *et seq.*, and Title 17 of the California Code of Regulations, §§ 93120-93120.12, specifically "Phase 2," which sets maximum levels of formaldehyde emissions for laminate flooring products.

77.     Lumber Liquidators committed unfair business practices by:

a.     Engaging in conduct, as alleged herein, where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiffs and other Class members;

b.     Engaging in conduct, as alleged herein, that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the other Class members; and

c.     Engaging in conduct, as alleged herein, that undermines or offends public policy and California laws which seek to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

78.     Lumber Liquidators knew or should have known of the defects as described herein.

79.     Lumber Liquidators committed fraudulent business practices by engaging in conduct, as alleged herein, that was and is likely to deceive consumers acting reasonably under the circumstances.   Lumber Liquidators' fraudulent practices include but are not limited to misrepresenting, failing to adequately disclose and/or concealing from Plaintiffs and Class members the true nature of its

Flooring Products.  Lumber Liquidators' acts, omissions, and practices as alleged herein constitute fraudulent business practices in that Lumber Liquidators misrepresented and misrepresents its compliance with CARB Regulations, the measures taken to ensure that mills in China complied or comply with CARB Regulations and the safety and quality of its Flooring Products.  In addition, Lumber Liquidators violated the UCL by failing to disclose that its Flooring Products emit excessive levels of formaldehyde, are not CARB compliant and are unsafe.

80.   Plaintiffs relied on Lumber Liquidators' misrepresentations and omissions.

81.   Plaintiffs and Class members have suffered injury in fact and have lost money and property as a result of Lumber Liquidators' unlawful, unfair, or fraudulent practices, in that, among other things:

a.   Plaintiffs and Class members would not have paid for the Flooring Products had they known the Flooring Products emitted excessive levels of formaldehyde and were not compliant with CARB Regulations;

b.   Plaintiffs and Class members have been deprived of making an informed decision about the Flooring Products they have purchased; and

c.   Plaintiffs and Class members have incurred out-of-pocket expenses to purchase, install, test, remove and/or replace Flooring Products as a result of Lumber Liquidators' misrepresentations and failures to disclose.

82.   The above-described unfair, unlawful and fraudulent business practices conducted by Lumber Liquidators present a threat and likelihood of harm and deception to members of the Class in that Lumber Liquidators has systematically perpetrated and continue to perpetrate the unfair, unlawful and

fraudulent conduct upon members of the public by engaging in the conduct described herein.

83.     Accordingly, Plaintiffs, on behalf of themselves and others similarly situated, seek restitution and injunctive relief in the form of an order enjoining Lumber Liquidators from continuing to engage in unlawful, unfair or fraudulent business practices, and other acts prohibited by law.

## SECOND CLAIM FOR RELIEF
**(For Violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.)**

84.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

85.     Lumber Liquidators engaged in unlawful and/or fraudulent conduct under California's False Advertising Law, Business & Professions Code § 17500, *et seq*. ("FAL") over the course of the class period by selling Flooring Products and publically disseminating advertisements that it knew or reasonably should have known were untrue and misleading.

86.     Lumber Liquidators committed such FAL violations with actual knowledge or knowledge fairly implied on the basis of objective circumstances.

87.     Lumber Liquidators' advertisements, representations, and labeling as described herein were designed to, and did, result in the purchase and use of Flooring Products and Lumber Liquidators profited from its sales of these products to unwary consumers.

88.     Plaintiffs reasonably relied on Lumber Liquidators' unlawful misrepresentations.

89.     As a direct result of Lumber Liquidators' violations Plaintiffs and members of the Class suffered injury in fact and lost money.

90.     Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution and injunctive relief against Lumber Liquidators in the form of an

order prohibiting it from engaging in the misconduct alleged herein.

**THIRD CLAIM FOR RELIEF**

**(For Violations of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*)**

91.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

92.     Lumber Liquidators is a "person" within the meaning of Civil Code §§ 1761(c) and 1770.

93.     Lumber Liquidators sells "goods" within the meaning of Civil Code §§ 1761(a) and 1770.

94.     Plaintiffs and the Class are consumers within the meaning of Civil Code § 1761(d).

95.     Plaintiffs' purchase of Lumber Liquidators Flooring Product constitutes a transaction within the meaning of Civil Code §§ 1761(3) and 1770.

96.     Lumber Liquidators' conduct violated and continues to violate the CLRA in at least the following respects:

        a.     In violation of section 1770(a)(2) and (a)(3) of the CLRA, Lumber Liquidators misrepresented the certification of goods (*i.e.*, its Flooring Products) or the certification of the goods by another;

        b.     In violation of section 1770(a)(5) of the CLRA, Lumber Liquidators represented that goods (*i.e.*, its Flooring Products) have characteristics or benefits which they do not have;

        c.     In violation of section 1770(a)(7) of the CLRA, Lumber Liquidators represented that goods (*i.e.*, its Flooring Products) are of a particular standard, quality, or grade when they are of another;

       d.      In violation of section 1770(a)(9) of the CLRA, Lumber Liquidators advertised goods (*i.e.*, its Flooring Products) with the intent not to sell them as advertised; and

       e.      In violation of section 1770(a)(16) of the CLRA, Lumber Liquidators represented that the subject of the transaction (*i.e.*, its Flooring Products) was supplied in accordance with a previous representation when it was not.

97.     Lumber Liquidators had knowledge of the defects as described herein.

98.     Lumber Liquidators engaged in these unfair or deceptive acts and practices with the intent that they result, and which did result, in the sale of Flooring Products to Plaintiffs and the Class.

99.     By engaging in unfair or deceptive conduct in violation of the CLRA, Lumber Liquidators actively concealed and failed to disclose material facts about the true characteristics of the transaction leading to Plaintiffs' and Class members' purchase of Flooring Products, despite having knowledge of the defects described herein before Plaintiffs and Class members purchased the Flooring Products.

100.     The fact that consumers were entering into a sale for Flooring Products that were misrepresented as being compliant with CARB Regulations for formaldehyde emissions and where the true character of the Flooring Products was not disclosed is material in that a reasonable person would have considered that an important factor in deciding whether to complete the transaction for the Flooring Product.  Specifically, the fact that the Flooring Products purchased by Plaintiffs were dangerously defective in that they emitted excessive levels of formaldehyde and failed to comply with CARB Regulations is material to them.  Plaintiffs would not have purchased the Flooring Product had they known of that fact.

101.     Lumber Liquidators' misrepresentation of material facts was designed to and did induce Plaintiffs and Class members to purchase its Flooring Products.

CLASS ACTION COMPLAINT

102.   As a direct and proximate result of Lumber Liquidators' violations of law, Plaintiffs and the Class members have been injured.  Pursuant to the provisions of Civil Code § 1782(d), on May 4, 2015, Plaintiffs provided notice by certified mail to Lumber Liquidators of their intention to seek damages under Civil Code § 1750, *et seq.*, unless Lumber Liquidators corrects, repairs, replaces or otherwise rectifies its violations of the CLRA.  In the event Lumber Liquidators does not take the appropriate actions described in the notice within the applicable 30-day period, Plaintiffs intend to amend their complaint to add a request for damages and available relief under the CLRA, including actual and punitive damages along with restitution and disgorgement of all earnings, profits, compensation and benefits obtained by Lumber Liquidators as a result of its violations of the CLRA.

103.   Plaintiffs and members of the Class request that this Court enter such orders or judgments as may be necessary to restore any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief, including attorneys' fees and costs, as provided in Civil Code § 1780 and the Prayer for Relief.

**FOURTH CLAIM FOR RELIEF**
**(Breach of Implied and Express Warranties under the Song-Beverly Act, Cal. Civ. Code § 1790, *et seq.*)**

104.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

105.   Under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792, *et seq.*, every sale of consumer goods is accompanied by both a "manufacturer's and retailer's" implied warranty that the goods are merchantable within the meaning of Cal. Civ. Code § 1791.1(a).

106.   The Flooring Products are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

107.   Lumber Liquidators is a "manufacturer," "distributor," and/or "retail seller" within the meaning of Cal. Civ. Code §§ 1791(e), (j) and (l).

108.   Plaintiffs bought the Flooring Products in the State of California.

109.   At the time of sale, and currently, Lumber Liquidators is in the business of manufacturing, marketing, distributing, supplying, assembling, labeling and/or selling the Flooring Products.

110.   Lumber Liquidators provided Plaintiffs and Class members with an implied warranty that the Flooring Products were merchantable and fit for the ordinary purposes for which they were sold.  However, the Flooring Products are not fit for their ordinary purpose of providing safe flooring because, *inter alia*, the Flooring Products contained and/or emitted dangerous levels of formaldehyde in excess of the limits established under CARB Regulations.

111.   The written express warranty included with the sale of each Flooring Product warranted that the Flooring Product complied with CARB requirements for formaldehyde emissions.  However, Lumber Liquidators breached its express warranty to Plaintiffs and Class members because the Flooring Products did not comply with CARB requirements for formaldehyde emissions.

112.   The defect in the Flooring Products exists at the point of sale, without warning to Plaintiffs and Class members.  Plaintiffs' and Class members' Flooring Products were incorrectly or falsely labeled and Lumber Liquidators did not provide notice to Plaintiffs and Class members that the Flooring Products were defective and unsafe.

113.   As a direct and proximate cause of Lumber Liquidators' breach of implied and express warranties, Plaintiffs and Class members have sustained damages and other losses in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF
**(Strict Products Liability)**

114.   Plaintiffs re-allege and hereby incorporate all preceding paragraphs as if they were fully set forth herein.

115.   Lumber Liquidators is, and at all times herein mentioned were,

-32-

engaged in the business of manufacturing, designing, supplying, distributing, assembling, marketing and selling Flooring Products to members of the general public.

116.  Lumber Liquidators knew and intended that the Flooring Products that it manufactured, designed, supplied, distributed, assembled, marketed and sold would be purchased by members of the public and would be used by its customers for personal use, without inspection by those consumers for defects.

117.  At the time Plaintiffs and Class members purchased the Flooring Products they were defective and unsafe for their intended purpose, in that they contained and/or emitted excessive and dangerous levels of formaldehyde and failed to comply with CARB Regulations.  Further, the Flooring Products were incorrectly or falsely labeled and did not otherwise contain proper warnings regarding the dangerous nature of the Flooring Products and related risks of injury, illness or death.  The products failed to carry appropriate warnings and labels, with Lumber Liquidators knowing that they would be used by the public, and particularly by Plaintiffs and the Class without inspection.

118.  Lumber Liquidators, as the designers, manufacturers, makers, producers, assemblers, promoters, sellers, distributors, advertisers, suppliers, owners, possessors, operators, constructors, installers, inspectors, maintainers, servicers and/or supervisors of the subject Flooring Products are liable to Plaintiffs under the strict liability theory imposed by the courts of the State of California for manufacturing, designing, retailing, distributing, wholesaling, modifying, advertising, promoting, servicing, etc., and placing on the market and in the flow of commerce Flooring Products that were and are defective, thereby injuring people using the product or posing a serious safety hazard.

119.  As a proximate result of Lumber Liquidators' defective products, Plaintiffs and the Class have been injured and suffered damages.

# SIXTH CLAIM FOR RELIEF
## (Negligence)

120.   Plaintiffs re-allege and hereby incorporate all preceding paragraphs as if they were fully set forth herein.

121.   Lumber Liquidators had a duty to Plaintiffs and the Class to design, manufacture, distribute, assemble, supply, market, label and sell safe Flooring Products that were fit for their intended purpose.

122.   Lumber Liquidators also had a duty to ensure that the Flooring Products were safe by conducting thorough research, testing, oversight and investigation of the Flooring Products before placing them on the market.

123.   Lumber Liquidators breached its duty to Plaintiffs and the Class by negligently designing, manufacturing, distributing, supplying, assembling, labeling, marketing, and selling the subject Flooring Products.  The applicable standard of reasonable care is to produce Flooring Products that are safe and comply with CARB Regulations establishing limits for formaldehyde emissions.   Lumber Liquidators fell below this standard of reasonable care.  Plaintiffs and the Class have been injured and inconvenienced through the purchase of their unsafe Flooring Products.

124.   Lumber Liquidators also knew or should have known that its Flooring Products were defective, dangerous and likely to cause serious illness, injury or death when used in a reasonably foreseeable manner by consumers, such as Plaintiffs and Class members, and that consumers, such as Plaintiffs and Class members, would not know of or recognize the dangers associated with the Flooring Products.

125.   A reasonable manufacturer, designer, supplier, distributor, marketer, assembler and/or seller under the circumstances alleged herein would have warned of these dangers.

126.   Lumber Liquidators failed to adequately warn of the potential risks

and dangers associated with its Flooring Products.

127.   Lumber Liquidators' breach of its duty and failure to warn consumers proximately caused damages to Plaintiffs and the Class, who have experienced injury and significant economic damages.

## SEVENTH CLAIM FOR RELIEF
### (Unjust Enrichment)

128.   Plaintiffs re-allege and hereby incorporate all preceding paragraphs as if they were fully set forth herein.

129.   This claim is brought in the alternative to any statutory and contract claims.

130.   By its unlawful, unfair, deceptive, and wrongful acts and omissions, Lumber Liquidators was unjustly enriched at the expense of Plaintiffs and the Class, who paid a substantial sum of money for Flooring Products, which were defective at the time of purchase.

131.   Lumber Liquidators was aware and had knowledge of the benefit it was receiving as a result of its unlawful, unfair, deceptive, and wrongful acts and omissions, as alleged above, and has enjoyed the benefit of its financial gains, to the detriment and at the expense of Plaintiffs and the Class.

132.   Lumber Liquidators' retention of some or all of the monies it has gained through its wrongful acts and practices would be unjust considering the circumstances under which it obtained those monies.

133.   Plaintiffs and the Class have no adequate remedy at law.

134.   Plaintiffs and the Class are entitled to seek restitution from Lumber Liquidators and an order disgorging all profits, benefits, and other compensation obtained by Lumber Liquidators for its wrongful conduct.

## EIGHTH CLAIM FOR RELIEF
### (Declaratory Relief)

135.   Plaintiffs re-allege and hereby incorporate all preceding paragraphs as

if they were fully set forth herein.

136.   Plaintiffs, on behalf of themselves and all others similarly situated, contend that Lumber Liquidators' Flooring Products and the manufacturing, design, distribution, supply, marketing and sales of its Flooring Products do not comply with CARB Regulations.  On information and belief, Lumber Liquidators contends that its Flooring Products and the manufacturing, design, distribution, supply, marketing and sales of its Flooring Products, comply with CARB Regulations.

137.   A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Lumber Liquidators as follows:

A.   An Order certifying this action as a class action;

B.   An Order appointing Plaintiffs as class representatives of the Class, and appointing counsel undersigned to represent the Class;

C.   An Order awarding injunctive relief by prohibiting Lumber Liquidators from continuing to manufacture, design, assemble, distribute, market, and/or sell Flooring Products that violate CARB Regulations;

D.   A finding and declaration that Lumber Liquidators' policies and practices of manufacturing, designing, assembling, distributing, marketing, selling, labeling and advertising the composite laminate Flooring Products that it sells in California and throughout the country as CARB compliant are unlawful pursuant to CARB Regulations;

E.   Payment to the Class of all damages associated with the purchase, installation, testing, removal and replacement of the defective products, in an amount to be proven at trial;

F.   Restitution as authorized by law;

G.      An award of attorneys' fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class;

H.      Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

I.      Such other and further relief as this Court may deem just, equitable, or proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  May 8, 2015          KERSHAW, CUTTER & RATINOFF LLP


                   By: */s/ William A. Kershaw*
                       William A. Kershaw

                   Stuart C. Talley
                   Ian J. Barlow
                   401 Watt Avenue
                   Sacramento, California 95864
                   Telephone:  (916) 448-9800
                   Facsimile:    (916) 669-4499

                   *Attorneys for Plaintiffs and the Class*

1
2

## DECLARATION OF WILLIAM A. KERSHAW
## PURSUANT TO CALIFORNIA CIVIL CODE § 1780(d)

3     I, William A. Kershaw, declare as follows:

4            1.      I submit this declaration pursuant to section 1780(d) of the California
5     Consumers Legal Remedies Act.  I have personal knowledge of the matters set
6     forth below and if called as a witness could and would be competent to testify
7     thereto.

8            2.      Defendant Lumber Liquidators Holdings, Inc. and Defendant Lumber
9     Liquidators, Inc. (collectively, "Lumber Liquidators") are Delaware corporations
10    with their principal places of business at 3000 John Deere Road, Toano, Virginia
11    23168.    Lumber Liquidators does businesses throughout Riverside County,
12    California, the State of California and throughout the United States of America.

13           I declare under the penalty of perjury under the laws of the State of
14    California and the United States that the foregoing is true and correct and that this
15    declaration was executed on May 8, 2015, in Sacramento, California.

16
17                                             */s/ William A. Kershaw*
                                               William A. Kershaw
18
19
20
21
22
23
24
25
26
27
28